UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAURICE TAYLOR : | |
| : | 05-cv-1887 (RWR) |
| v. : | |
| : | |
| U.S. PAROLE COMMISSION, et al. : | |
| : | |

**U.S. PAROLE COMMISSION'S OPPOSITION TO
PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**

The United States Parole Commission, through its attorney, the United States Attorney for the District of Columbia, hereby respectfully opposes Petitioner's petition for writ of *habeas corpus*. In support of its opposition, the United States submits the following:

**PROCEDURAL HISTORY**

On March 13, 1990, petitioner was sentenced to serve 15 to 45 years of incarceration for the charge of Armed Robbery, in case number F-8099-89. *See* Exhibits A and B (Sentence Monitoring Computation Sheet; Judgment and Commitment Order, March 13, 1990). The Bureau of Prisons determined that petitioner would be eligible for parole from this sentence as of August 7, 1999, his statutory release date would be September 18, 2019, and his full term date would be July 11, 2034. *See* Exhibit A, p. 2.[1] Thus, petitioner's parole supervision officer requested a parole violator warrant for petitioner's arrest in July 1989. *See* Exhibit C, p. 6

---

[1] At the time petitioner was to be sentenced for the crime of Armed Robbery, he was already on parole for the following offenses: 1) Second-Degree Burglary (F-160-83); 2) Possession of Diluadid (F-2543-89); and 3) Prison Breach (F-3214-89). *See* Exhibit C, pp. 6-7 (Presentence Report for Maurice Taylor). The D.C. Board of Parole issued a parole violator warrant for petitioner's arrest on October 24, 1990, and they lodged that warrant as a detainer against petitioner. *See* Exhibit G, *infra* (Notice of Action, April 13, 2002).

(Presentence Report for Maurice Taylor).[2]

On February 28, 1999, the U.S. Parole Commission ("Parole Commission") conducted a hearing in order to consider petitioner's suitability for parole and determined that he was not suitable for parole at that time.  *See* Exhibit D, pp. 3-4 (D.C. Initial Hearing Summary).  In March 1999, the Parole Commission ordered that petitioner be reconsidered for parole in February 2001.  *See* Exhibit E (Notice of Action, March 15, 1999).[3]

On March 28, 2002, the Parole Commission held a hearing in order to assess petitioner's parole suitability and the hearing examiner recommended that petitioner be released on parole on July 23, 2003.  *See* Exhibit F (D.C. Adult Rehearing Summary).  On April 13, 2002, the Parole Commission ordered that a parole violator warrant that had been previously issued by the Parole Board on October 24, 1990, be withdrawn, and further ordered that petitioner be placed on presumptive parole as of July 23, 2003.  *See* Exhibit G (Notice of Action, April 13, 2002). However, on May 6, 2003, the Parole Commission re-evaluated petitioner's parole and retarded his parole until September 26, 2003, due to petitioner's violation of rules within his detention facility.  *See* Exhibit H (Notice of Action, May 6, 2003).   Consequently, the Parole Commission ordered petitioner to participate in a drug treatment program.  *Id*.  On September 26, 2003, petitioner was released on parole from the Hope Village Community Correctional Center.  *See*

---

[2]  Although the author of the report stated that a parole violator warrant for petitioner's arrested was requested by his parole officer, the author did not possess any information showing that the District of Columbia Board of Parole responded to that request.  *Id*.

[3]  The National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law No. 105-33, §§ 11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code § 24-131 (formerly § 24-1231), transferred the functions of the D.C. Board of Parole to the U.S. Parole Commission, and transferred jurisdiction over D.C. Code offenders to the Commission.

Exhibits I and J (Certificate of Parole, September 26, 2003; Notice of Release and Arrest, September 26, 2003).  On that date, petitioner signed a Certificate of Parole, which contained a list of conditions he would be required to meet while he was on parole.  *See* Exhibit I.

On June 21, 2004, a community supervision officer with the Court Supervision and Offender's Services Agency ("CSOSA") informed the Parole Commission that petitioner tested positive for drugs between April and June 2004.  *See* Exhibit K (Report of Drug Use).  The officer also stated in her report that petitioner received a verbal warning regarding the impact his drug use will have on his ability to remain on parole, and she requested that the Parole Commission issue a written reprimand to petitioner as well.  *Id*.  Consequently, on July 2, 2004, the Parole Commission issued a written reprimand to petitioner for his drug use, which constituted a violation of one a condition of his parole.  *See* Exhibit L (Notice of Reprimand). On July 29, 2005, petitioner's community supervision officer issued a violation report alleging that petitioner tested positive for drug use between July and December 2004, as well as July 26, 2005.  *See* Exhibit M (Report of Violation, July 29, 2005).  The report also contained allegations of petitioner's failure to report for drug testing, his failure to report to his parole officer, his abscondence from a drug treatment program, and his failure to comply with a sanction that was imposed against him.  *Id*. at 2.  Consequently, the Parole Commission issued a parole violator warrant for petitioner's arrest on August 5, 2005.  *See* Exhibit N (Warrant, August 5, 2005).  The warrant was executed on August 31, 2005, and a probable cause hearing was held on September 2, 2005.  *See* Exhibit O (Probable Cause Hearing Digest).

On October 21, 2005, the Parole Commission extended a written expedited revocation proposal to petitioner's attorney, which would give petitioner the opportunity to waive his revocation hearing and accept responsibility for the violations he incurred while on parole. *See* Exhibit P (Expedited Revocation Proposal). On November 3, 2005, petitioner accepted the Parole Commission's proposal; therefore, the Parole Commission revoked his parole, ordered that petitioner not receive credit for the time he had spent on parole, ordered that he serve 12 months in jail, and ordered that he be placed on presumptive parole on August 30, 2006. *See* Exhibits P and Q (Expedited Revocation Proposal, and Notice of Action, November 3, 2005). Consequently, petitioner waived his right to a revocation hearing and waived his right to challenge the Parole Commission's decision on appeal. *See* Exhibit P.

## **ARGUMENT**

### A.     **Introduction**

Petitioner raises the following four claims in his petition for habeas relief: 1) the Parole Commission has been abolished; thus it lacks jurisdiction to revoke petitioner's parole; 2) the Parole Commission acted in bad faith when it revoked petitioner's parole in November 2005; 3) the Parole Commission unlawfully forfeited the time petitioner had spent on parole; and 4) an error exists on petitioner's judgment and commitment order that entitles him to relief. Each of petitioner's claims are without merit and his petition should be summarily denied.

### B.     **Parole Commission Has Jurisdiction To Revoke Petitioner's Parole**

Petitioner's claim that the Parole Commission lacks authority to act in his case because the Commission has been abolished is without merit. The Parole Commission was originally scheduled to be abolished five years after the effective date of the Sentencing Reform Act of

1984; however, its existence has been extended on several occasions. Most recently, the Parole Commission's existence was extended until November 1, 2008, pursuant to U.S. Parole Commission Extension and Sentencing Commission Authority Act of 2005, Pub. L.No. 109-76, Section 2.[4] The Parole Commission makes parole release and parole revocation decisions for parole-eligible D.C. Code inmates pursuant to D.C. Code § 24-131.[5] Under the recent extension legislation, the Commission continues to operate and lawfully make these decisions. Accordingly, petitioner's claim in this regard lacks merit, and it should be summarily denied.

---

[4] Section 235(b)(1)(a), 98 Stat. 2032, kept the Parole Commission in existence for five years after the effective date of the Act (November 1, 1987), until October 31, 1992, to process the cases of prisoners convicted of crimes committed before the effective date of the Act, who would still be incarcerated after that date. *Romano v. Luther*, 816 F.2d 832 (2d Cir. 1987); *Lightsey v. Kastner*, 846 F.2d 329 (5th Cir. 1988), *reh'g denied*, 835 F.2d 925, *cert. denied*, 109 S.Ct. 807 (1989); *Agostino v. Keohane*, 877 F.2d 1167 (3d Cir. 1989). In 1990, Congress extended the life of the Parole Commission until October 31, 1997 in the Judicial Improvements Act of 1990. *See* § 316 of Pub. L.No. 101-650, 104 Stat. 5115 (Dec. 1, 1990). On October 2, 1996, the existence of the Parole Commission was extended for an additional five years, to November 1, 2002, by the Parole Commission Phaseout Act of 1996. Parole Commission Phaseout Act of 1996, Pub. L.No. 104-232, 110 Stat. 3055, Section 2(a)(October 2, 1996). Under the Parole Commission Phaseout Act, the Parole Commission was scheduled for dissolution on October 31, 2002, 15 years after November 1, 1987, the effective date of the Act. *Walden v. U.S. Parole Commission*, 114 F.3d 1136, 1138-39 (11th Cir. 1997). Prior to the 2002 expiration period, Congress passed, and the President signed into law, legislation extending the Commission until October 31, 2005. *See* Pub. L.No. 107-273, 116 Stat. 1758, 1824. Similar legislation was recently passed and signed into law further extending the Commission to October 31, 2008. *See* U.S. Parole Comm'n Extension and Sentencing Commission Authority Act of 2005, Pub. L.No. 109-76, Section 2.

[5] Petitioner is under the mistaken assumption that the Commission has revoked his probation. Motion at p. 4. The Commission has no authority to revoke D.C. Code offenders' probation, and the Commission has not done so in this case.

### C. The Parole Commission Acted In Good Faith When It Revoked Petitioner's Parole

Petitioner's argument that the Parole Commission acted in bad faith when it revoked his parole is without merit and is not supported by the record. The law is clear that absent any indication to the contrary, the Parole Commission is presumed to have acted in good faith in its decision-making. *See Bridge v. U.S. Parole Commission*, 981 F.2d 97, 105 (3d Cir. 1992) (government officials are presumed to act in good faith). The record shows that the Parole Commission has at all times acted in good faith and has followed the D.C. parole statute and the Parole Commission's regulations implementing the statute. Petitioner appears to be arguing that he did not receive either a probable cause hearing or a parole revocation hearing as required by these regulations. The record does not support petitioner's contentions. Petitioner was arrested on the Parole Commission's warrant on August 31, 2005, and several days later he received a probable cause hearing before a Commission hearing examiner on September 2, 2005. *See* Exhibit O, *supra*. Petitioner was offered an opportunity for a revocation hearing after the Parole Commission found probable cause to continue with revocation proceedings. However, petitioner affirmatively waived that hearing by accepting the Parole Commission's proposal for an expedited revocation process. *See* Exhibit P, supra. The Commission's regulations explicitly permit this type of revocation procedure. *See* 28 C.F.R. § 2.66. Having affirmatively waived his right to a revocation hearing, petitioner cannot now complain of a lack of hearing.[6]

---

[6] On November 3, 2005, petitioner accepted the Commission's decision by placing his initials next to the following statement: "I accept the above-proposed decision of the U.S. Parole Commission. By accepting this decision, I understand that I am accepting responsibility for my conduct, waiving my right to a revocation hearing, and waiving my right to appeal the decision." *See* Exhibit P at p. 5. Petitioner was represented by counsel when he accepted the decision, and his attorney signed the expedited agreement as a witness. *Id.* It appears from the record that

Thus, petitioner's claim in this regard is also without merit, and it should be summarily denied.

### D. Petitioner Is Not Entitled To Receive Credit For "Street Time."

Petitioner also claims that the Parole Commission unlawfully denied him credit for the time he has already spent on parole. His claim is without merit and should be denied because his sentence is being executed in accordance with the applicable law which requires the forfeiture of what is commonly known as "street time" when a parolee's parole is revoked.

Petitioner's claim that the Commission unlawfully violated his rights under the Constitution when it did not give him credit for street time fails. To the contrary, it has long been established that when a prisoner violates parole and parole is subsequently revoked, "[t]he time [the] prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced." D.C. Code § 24-406(a).

Indeed, in *United States Parole Commission v. Noble*, 693 A.2d 1084, 1086-87 (D.C. 1997), adopted *en banc*, 711 A.2d 85 (D.C. 1998), the District of Columbia Court of Appeals held that, under D.C. Code § 24-206(a), a parolee must forfeit all the time spent he has spent on parole if parole is revoked, *i.e.*, he must forfeit his "street time."[7] Later, in *Davis v. Moore*, 772 A.2d 204 (D.C. 2001) (*en banc*), the District of Columbia Court of Appeals held that the retroactive application of *Noble* to prisoners whose "street time" had been served before *Noble* was decided did not violate the *ex post facto* clause. *Davis*, 772 A.2d at 215-16. Thus, there is no support for Petitioner's claim that he is entitled to credit for his "street time" or that the forfeiture of his "street time" following the revocation of his parole violates his Constitutional

---

petitioner filed the instant petition before he agreed to the expedited revocation proposal.

[7] After *Noble* was decided, D.C. Code § 24-206 was re-codified at § 24-406.

rights.[8]

## CONCLUSION

For the reasons set forth above, it is clear that Petitioner is not entitled to relief. Therefore, the government requests that Petitioner's petition for a writ of *habeas corpus* be summarily denied.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney

ROBERT D. OKUN
Chief, Special Proceedings Section


_____/s/_____
TRICIA D. FRANCIS
D.C. Bar 457800
Assistant United States Attorney
555 Fourth Street, N.W., Tenth Floor
Washington, D.C. 20530
(202) 353-9870

---

[8] Petitioner's claim for relief regarding the content of the Judgment and Commitment Order should also be denied. His claim that an error exists in the order lacks merit and is not a proper subject for this proceeding. Petitioner was originally sentenced in the Superior Court to an aggregate maximum 45-year sentence. *See* Exhibit B. Any claim challenging the legality of the order should be raised under D.C. Code §23-110, not via a *habeas* petition in this Court, unless the petitioner can establish that § 23-110 is an inadequate and ineffective remedy. See D.C. Code § 23-110(g); *Garris v. Lindsay*, 94 F.2d 722, 725-26 (D.C. Cir. 1986), *cert. denied*, 479 U.S. 993 (1986).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of December, 2005, a copy of the foregoing pleading was served via U.S. mail on Petitioner Maurice Taylor, postage prepaid, at the following address:

Maurice Taylor
DCDC# 191-971
1901 D St., SE
Washington, DC 20003

_____
ASSISTANT UNITED STATES ATTORNEY